**MERRIWEATHER, et al., Plaintiffs,**

v.

**SHERWOOD, et al., Defendants.**

**No. 77 Civ.3241(CM)(MDF).**

United States District Court,
S.D. New York.

March 28, 2003.

---

## MEMORANDUM ORDER AND DECISION

McMAHAON, District Judge.

Before the court is defendants' objections to a Report and Recommendation by Magistrate Judge Mark D. Fox recommending that I deny defendants' motion to strike plaintiffs' motion to hold defendants in contempt of a Consent Judgement entered in this action more than twenty years ago. For the following reasons, I adopt Judge Fox's recommendation.

## BACKGROUND

This case began in 1977, when inmates from the Orange County Correctional Facility sued Orange County and its officials for alleged constitutional violations being committed at the prison. The parties eventually agreed on a consent decree, which Judge Weinfeld of this Court entered in October of 1978.

In November 2002, defendants moved to dissolve the consent decree pursuant to the Prison Litigation Reform Act ("PLRA"), which Congress had passed in the interim period. See 18 U.S.C. 3626(b). On December 19, 2002, I found that the consent decree had been stayed as of De-

cember 4, 2002, pending resolution of defendants' underlying dissolution motion, by operation of the PLRA's automatic stay provisions. *See Merriweather v. Sherwood,* 235 F.Supp.2d 339, 341–42 (S.D.N.Y. 2002); 18 U.S.C. 3626(e). I also scheduled the necessary proceedings to resolve defendants' motion to permanently dissolve the consent decree. *Merriweather,* 235 F.Supp.2d at 348–49.

On that same day, December 19, 2002, plaintiffs moved to hold defendants in contempt for alleged violations of the consent decree. Plaintiffs' motion engendered a barrage of correspondence to this Court regarding the interplay between defendants' motion to dissolve the consent decree and plaintiffs' contempt motion. Defendants argued that plaintiffs' motion was for criminal contempt (not civil), and that moving forward with discovery on that motion would violate their rights as alleged criminal contemnors.

I informed the parties on January 23, 2003 that I would not decide plaintiffs' contempt motion until I decided the issue of the consent decree; that discovery, under Judge Fox's supervision, would continue to move forward since the discovery on the motions was largely contiguous; and that I would entertain a motion to strike on the grounds that plaintiffs' motion was for criminal contempt and they therefore had no standing to bring it. The parties agreed to appear before Judge Fox for a Report and Recommendation on all three matters: the motion to dissolve the consent decree, plaintiffs' contempt motion, and defendants' motion to strike plaintiffs' contempt motion. Defendants now object to Judge Fox's Report and Recommendation, dated March 7, 2003, recommending that I deny defendants' motion to strike.

## DISCUSSION

The procedures that apply in a civil contempt proceeding differ from those that apply in a criminal contempt proceeding. That is because "[c]riminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 826, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (internal citations and quotation marks omitted). The attorney who prosecutes a criminal contempt, for example, must be disinterested and impartial. *See Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 804, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). Thus, defendants argue that plaintiffs' attorneys cannot prosecute their contempt motion if it is for criminal contempt.

"Although the procedural contours of the two forms of contempt are well established, the distinguishing characteristics of civil versus criminal contempts are somewhat less clear." *Bagwell,* 512 U.S. at 823, 114 S.Ct. 2552. The Supreme Court has made clear, however, that the distinction between civil and criminal contempt turns on "the substance of the proceedings and the character of the relief that the proceeding will afford." *Hicks v. Feiock,* 485 U.S. 624, 631, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Generally speaking, "[i]f it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Id.* (quoting *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)).

In their December 19 contempt motion, plaintiffs sought "compensatory penalties ... of $1000 per day/per violation." They clarified their request in a supplemental affidavit, explaining that they request:

compensatory civil damages in the full amount that the court decides are just and proper after hearing appropriate evidence of the severity of each contemptuous incident and the effect(s) thereof on the plaintiff class. We would expect that egregious incidents of contempt such as denial of medical, dental and/or mental health treatment and inmate beatings would engender more substantial fines than other, less harmful contempt incidents. In addition, plaintiffs will seek an award of costs and attorneys fees.

Thus, plaintiffs seek solely monetary relief. As the Supreme Court has explained, a contempt fine (monetary relief) "is considered civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'" *Bagwell*, 512 U.S. at 829, 114 S.Ct. 2552 (quoting *United States v. Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)).

▇▇▇ Plaintiffs labeled their initial request (for $1000 per day/per violation) "compensatory." The labels affixed to a proceeding or relief imposed, however, are not controlling. *Hicks*, 485 U.S. at 631, 108 S.Ct. 1423; *see also Bagwell*, 512 U.S. at 828, 114 S.Ct. 2552 ("[T]he stated purposes of a contempt sanction alone cannot be determinative."). Looking to the substance of plaintiffs' initial request, it seems that it was either punitive or coercive. One thousand dollars per day for every violation does not compensate plaintiffs for losses they may have sustained. Plaintiffs may have incurred losses far greater or far less than that amount as a result of any violations of the consent decree. And "[w]here a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Bagwell*, 512 U.S. at 829, 114 S.Ct. 2552. "Thus, a 'flat,

unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* (citing *Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590, 67 S.Ct. 918, 91 L.Ed. 1117 (1947)).

Plaintiffs filed their motion the same day that I ruled that the consent decree had been stayed. Thus, plaintiffs did not know when they filed the motion whether or not the consent decree was in effect. Insofar as they may have thought that the consent decree was not stayed, it appears that plaintiffs may have requested coercive fines; they may have asked for $1000 per day until defendants complied with the consent decree. Defendants would have therefore had an opportunity to "purge" by complying with the consent decree.

Insofar as plaintiffs requested $1000 per day for every *past* violation, the fines they requested were punitive. Defendants would be unable to purge by complying with the consent decree and thereby reducing or avoiding the fine. A fine of $1000 per day for every past violation would be "flat" and "unconditional."

In their subsequent affidavit, however, plaintiffs clarified (or changed) their request. They explained that they seek damages for each of defendants' acts that constitutes a failure to comply with the consent decree, and they ask the court to calibrate the damages (upon hearing evidence of such incidents) depending on the severity of the contumacious act. This request is for compensatory damages.

▇▇▇ Compensatory fines "compensate[ ] a private party for the consequences of contemnor's disobedience." *Hutto v. Finney*, 437 U.S. 678, 691 n. 17, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). As the Second Circuit has explained, compensatory fines in civil contempt proceedings are analogous to a tort judgment for damages

caused by wrongful conduct: they are "employed not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir.1979). As Judge Fox noted, "[p]laintiffs refined request for relief bears a relationship to the loss claimed. Depending on the severity of the violation, plaintiffs have only requested an amount the Court deems proper to remedy it." Put simply, plaintiffs appear to ask to be compensated—"made whole"—for defendants' past acts in violation of the consent decree.

■ The situation is similar to the one that Judge Baer faced in *Benjamin v. Kerik,* 1999 WL 221113 (S.D.N.Y. Apr.14, 1999). There, a prisoner at Rikers Island brought a contempt action against prison officials for preventing him from attending his son's wake, which he argued was in violation of a 1979 consent decree. Though Judge Baer found that plaintiff had failed to establish one of the three prerequisites necessary to hold a party in civil contempt,[1] he did not treat plaintiff's motion as one for criminal contempt. *See id.* at *3 n. 5 (citing *Vuitton,* 592 F.2d at 130).

■ It is understandable that defendants could have construed plaintiffs' motion as seeking criminal fines. But plaintiffs' clarification of their request indicates that they seek compensatory damages. And insofar as their request is unclear, there is a "presumption in favor of finding civil as opposed to criminal contempt where there is some doubt as to the nature of the contempt." *United States v. Ayer,*

866 F.2d 571, 573 (2d Cir.1989) (quoting *United States v. Wendy,* 575 F.2d 1025, 1029 n. 13 (2d Cir.1978)).

## CONCLUSION

I accept Judge Fox's Report and Recommendation. Defendants' motion to strike plaintiffs' contempt motion is denied. I adhere to my earlier statement that I will not deal with the merits until I have resolved the fate of the consent decree.

This is the decision and order of the Court.

---

1. A party may be held in civil contempt for its failure to comply with a court order if (1) the order is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the alleged contemnor has not diligently attempted compliance in a reasonable manner. *See King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995).