**Elizabeth FISHER, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA,
et al., Defendants.**

Civ. A. No. 93–1004.

United States District Court,
District of Columbia.

June 2, 1993.

Matthew B. Bogin, Francis Lopez, Bogin and Eig, Washington, DC, for plaintiffs.

Grace Perry–Gaiter, Corp. Counsel, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

Plaintiff Elizabeth Fisher is a disabled child residing with her parents, Plaintiffs Frederick and Rebecca Fisher. Elizabeth is eligible for special education services pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.* Plaintiff Bryan Stamm is a disabled child residing with his parents, Plaintiffs Mr. and Mrs. Geoffrey Stamm. Bryan also is eligible for special education services under the IDEA. Defendants are the District of Columbia and Franklin L. Smith, Superintendent of the District of Columbia Public Schools ("DCPS"). The District of Columbia is required by law to provide such eligible students with the special education services they need, and this obligation is not in dispute. Elizabeth is currently placed at the Chelsea School, located in Silver Spring, Maryland. Bryan is currently placed at the Ivymount School, located in Rockville, Maryland.

The dispute involved in this case concerns the level of funding the District is required to provide for D.C. special-needs students placed at private facilities. Plaintiffs seek an order from this Court requiring the District of Columbia to pay the full amount of the tuition charged by the Chelsea and Ivymount Schools for the special education services provided by those schools to Elizabeth and Bryan, respectively, during the 1992–93 academic year.[1] Defendants have filed a motion to dismiss Plaintiffs' action. An evidentiary hearing was held on May 24 and May 25, 1993. As all evidentiary issues have been tried and the record is complete, this case is currently ripe for a final disposition on the

---

**1.** The schools are also seeking full tuition payments from the District for the 1991–92 school year. This matter is presently before the D.C. Board of Contract Appeals, and is not before this Court in this case.

merits. Accordingly, this Memorandum Opinion and Order represent the final judgment of this Court in this case.

The Court finds that the District's actions in this case are without justification. The District is attempting to transfer its budgetary shortfall to the parents of these special education students. Indeed, it has literally turned them into beggars, making them "beg" for the money needed to educate their children. They have been forced to file suit in federal court in order to assure that their children obtain the special education which their children so desperately need and to which they are legally entitled. For the reasons discussed more fully below, the Court will order the District to pay the Chelsea and Ivymount Schools the full tuition and charges for related services billed by them. The cases of Elizabeth and Bryan will be discussed in turn.

### A. *Elizabeth Fisher*

Prior to the 1992–93 academic year, in conformance with D.C. regulations, the Fishers had their daughter Elizabeth undergo educational testing, which revealed that she needed to be enrolled in a special education program. The Fishers first sought to enroll Elizabeth in the Lab School, which is located in the District of Columbia. Because enrollment at the Lab School was full, the District had to find another qualified educational institution for Elizabeth to attend.

The District having failed to locate another appropriate placement for Elizabeth to meet her special education needs, the Fishers requested that the District place Elizabeth at the Chelsea School, located in Silver Spring, Maryland. Because the District would not voluntarily agree to this placement, the Fishers instituted administrative proceedings against the District. An administrative hearing was held on November 16, 1992.[2]

The hearing officer's decision states:

[W]here there has been a finding of denial of special education and an order by a hearing officer to DCPS to take action by a date certain and DCPS fails to do so, ... DCPS can be ordered to place and fund the student in the parent's proposed placement until such time that DCPS can demonstrate that they have an appropriate placement. Those conditions have been met in this case. Accordingly DCPS is hereby ordered to place and fund Elizabeth Fisher at Chelsea School from September 8, 1992 until such time as they can demonstrate that they have an appropriate placement.

Hearing Officer's Determination In the Matter of Elizabeth Fisher, at 4 (November 24, 1992). The District has not appealed this decision, nor proposed an alternative placement.

Pursuant to the hearing officer's decision, Elizabeth is attending the Chelsea School, and the District is required to pay the school's tuition cost. While the District has made some payments to Chelsea for Elizabeth's tuition for the months of September 1992 through March 1993.[3] It has refused to pay the full amount of the tuition charged by Chelsea. Instead, the District has paid Chelsea at a rate set arbitrarily by the District.

The following facts are not in dispute:

(1) Elizabeth Fisher is entitled to receive special education services at Chelsea, which is a qualified and appropriate school for the delivery of special education services to D.C. students.

(2) The District is required to pay for the tuition and the related special education services provided to Elizabeth by Chelsea.

(3) The District has unilaterally determined to pay a tuition rate lower than the tuition charged by the school and paid by the school's other students.

---

2. Because the District initially refused to pay Elizabeth's tuition, the Fishers had to take out a $7,500 loan which they used to pay for Elizabeth's tuition, pending the hearing officer's decision. As soon as Chelsea receives payment in full for Elizabeth's tuition, it will reimburse the Fisher's for the amount they have paid.

3. At the District's request, Chelsea bills the District on a monthly basis, and, as of the time of the writing of this Opinion, payment for the months of April, May and June 1993 is not yet due.

(4) There is no written contract between Chelsea and the District governing the provision of special education services to Elizabeth and the payment Chelsea is to receive for providing such services during the 1992–93 school year.

The key issue is whether the District is required to pay the full amount of the tuition charged by Chelsea, or whether the District can pay the tuition rate it has determined it will pay.[4] The District argues that by accepting the payment tendered by the District, Chelsea agreed to accept that rate. It is clear to this Court, however, that Chelsea did not accept the District's payments as representing the total amount due.[5] For the reasons discussed below, the Court finds that the District must pay Chelsea the tuition charged by Chelsea for all its students.

The hearing officer's decision requires the District to "place and fund" Elizabeth at the Chelsea School. The hearing officer did not order the District to fund Elizabeth's placement in part, or at the rate it determined to pay. The decision clearly states that the District is to fund Elizabeth's placement at the school.[6]

It is important to remember that the Fishers petitioned the hearing officer to order Elizabeth's · placement at Chelsea only *after* the District failed to locate an appropriate placement for Elizabeth, as it was required to do. If the District does not wish to pay the tuition charged by Chelsea, it can locate an alternative appropriate placement for the child.[7] If the District has no alternative placement, it must pay the full cost of her education at Chelsea.[8] To hold otherwise and permit the District to unilaterally determine the rate it will pay would defeat the mandate of the IDEA and the order of the hearing officer.

Because there is no contract between Chelsea and the District governing the tuition Chelsea is to receive for the special education services it has provided to Elizabeth during the 1992–93 school year, the payment to which Chelsea is entitled is governed by the principle of quantum meruit. In other words, Chelsea is entitled to receive

4. The tuition charged by Chelsea is $1,508 per month. The tuition paid by the District, which has been paid for the months of September 1992 through March 1993, is $1,346.80 per month, leaving a shortfall of $161.40 per month.

5. Each month, Chelsea bills the District at its regular rate, and each month the District crosses out the amount charged by Chelsea and writes in and pays the rate the District has determined to pay. Officials from the DCPS Office of Special Education and officials from Chelsea have had a number of conversations over the course of the past year concerning the dispute between the tuition charged and the rate paid. Chelsea's Business Manager, Jack W. Hundley, testified that in its endorsement of the District's checks, Chelsea explicitly has indicated that Chelsea did not accept the payments as payments in full. It is clear that the District never was under the impression that Chelsea was accepting its monthly remittance as payment in full.

6. The hearing officer's decision is consistent with the Congressional mandate behind the IDEA to "assure that all handicapped children have available to them ... a *free* appropriate public education which emphasizes special education and related services designed to meet their unique needs ..." 20 U.S.C. § 1400(c) (emphasis added). Placement at a nonprofit private facility is permitted. *See* 20 U.S.C. § 1401; 34 C.F.R. § 300.401.

Additional support for the hearing officer's decision is found in the D.C. regulations implementing the IDEA, which require that, once a D.C. special needs student has been placed in a private facility, DCPS "shall pay the cost of tuition for special education and related services ..." 5 D.C.M.R. § 3015.2.

7. In fact, the IDEA recognizes that a school district can initiate a change of placement when it believes that a child's placement is inappropriate. A school district proposing such a change must provide notice to the child's parents. If the parents object to a change of placement, they are entitled to an administrative hearing. *See* 20 U.S.C. § 1415; 34 C.F.R. § 300.534. Cost considerations are a permissible reason for a school district to seek such a change. *See Clevenger v. Oak Ridge School Board*, 744 F.2d 514, 516–17 (6th Cir.1984).

The District's regulations similarly provide that the District can invoke the administrative procedure to change a student's placement if it has a disagreement with the placement. *See* 5 D.C.M.R. §§ 3006 *et seq.*

8. *See Parks v. Pavkovic*, 753 F.2d 1397 (7th Cir. 1985) (affirming district court's permanent injunction against the state of Illinois, which required the state to cover the full cost of related services provided to special-needs students and enjoined the state from requiring any parental contribution thereto.)

from the District the reasonable value of the services provided.

The Court finds that the tuition rate charged by Chelsea is reasonable. While the District argues that it can unilaterally determine the rate at which it will pay the Maryland school, it does not argue that the rate charged by Chelsea is unreasonable or contest the *method* by which Chelsea's rate *is* determined.[9] Even if the District did so argue, it is clear that the method used to determine the rate is fair and reasonable.

Chelsea is a not-for-profit institution. The members of its Board of Directors are unpaid. Chelsea pays its teachers, approximately 95% of whom are fully certified, a salary substantially less than that paid by the municipalities in the surrounding area, including the District. The tuition Chelsea receives covers only approximately 80% of the cost to educate a student at the school. In short, there is no suggestion of any excess "fat" in the operation of the school which could be cut to reduce its costs.

Moreover, although Chelsea is a private school, it must submit the tuition it proposes to charge each year to the Maryland Department of Education for approval, and the rate Chelsea is charging has been so approved. Finally, municipalities in Virginia and Maryland which have placed special education students at Chelsea have paid the full amount of the tuition charged, as has the D.C. Department of Human Services ("DCDHS") for children placed by DCDHS at the school. Clearly, the tuition charged by Chelsea is reasonable. The District must therefore pay that amount.

Accordingly, the District will be ordered to pay the difference between what it has paid and Chelsea's full tuition rate for the September 1992 through March 1993 months of the 1992–93 academic year. The District is also ordered to pay the full amount of the tuition charged by Chelsea, or $1,508 per month, for the remaining April, May and June 1993 months of the 1992–93 academic year, for which the District has not yet paid any sums.

### B. *Bryan Stamm*

The situation faced by Bryan Stamm is virtually identical to that faced by Elizabeth. Although Bryan is eligible for special education services, the District failed to locate an appropriate placement for him. As a result, the Stamms instituted administrative proceedings against the District to compel it to place Bryan at the Ivymount school.

In September 1992, an administrative hearing officer ordered that the District enroll and fund Bryan at the Ivymount School, located in Rockville, Maryland, effective retroactively to the beginning of the school year. The District has not appealed this decision, and it has made payments to Ivymount for Bryan's tuition for the 1992–93 school year. The District, however, has not paid the full amount of the tuition charged by Ivymount.

The following facts are not in dispute.

(1) Bryan Stamm is entitled to receive special education services at Ivymount, which is a qualified and appropriate school for the delivery of special education services to D.C. students.

(2) The District is required to pay for the tuition and the related special education services provided to Bryan by Ivymount.

(3) The District has been paying a tuition rate lower than that charged by the school.

---

9. Dr. Pinkney, director of the District's office for special education, testified that there were two reasons for the District's decision to pay the lower tuition rate set by the District. First, the District's budgetary constraints preclude it from paying the higher rate. Second, the District spends $13 million out of its $43 million special education budget on funding 487 D.C. students at private schools, and the remaining $30 million of its budget on the 6,600 special-needs students placed at public facilities in the District. Dr. Pinkney testified that it is the District's position that this allocation of funds is unfair, and in this sense the tuition charged by Chelsea is unreasonable. However, this argument relates to the reasonableness of the District's allocation and management of its own budget and placement of the students, not to the reasonableness of the tuition charged by the private schools. As discussed, the District has the option to place Elizabeth, as well as other special-needs children attending private schools, at another facility as long as the facility meets the children's needs. This the District has not done. The Court cannot permit the District to transfer its budgetary problems to these special-needs children and their parents.

(4) There is no written contract between Ivymount and the District governing the provision of special education services to Bryan and the payment Ivymount is to receive for providing such services during the 1992–93 school year.

Here again, the issue is whether the District is required to pay the amount charged by Ivymount for Bryan's tuition and related educational services, or whether the District can pay the rates it has determined it will pay.[10] The District argues that by accepting the payment tendered by the District, Ivymount agreed to accept that rate.

The discussion of the District's obligation with regard to Elizabeth Fisher is equally applicable to Bryan Stamm. It is clear that, as is the case with Chelsea, Ivymount did not accept the District's payments as representing the total amount due, and that no such contractual agreement for 1992–93 exists.[11]

As is the case with the Fishers, the Stamms petitioned the hearing officer to order Bryan's placement at Ivymount after the District failed to locate an appropriate placement for Bryan, as it was required to do. The hearing officer's decision requires the District to place and fund Bryan at the Ivymount School. If the District does not wish to pay the tuition charged by Ivymount, it can locate an alternative appropriate placement. However, if the District has no alternative placement, it must pay the full cost of Bryan's education at Ivymount.

Because there is no contract between Ivymount and the District governing the tuition Ivymount is to receive for the special education services it has provided to Bryan during the 1992–93 school year, the payment to which Ivymount is entitled is governed by the principle of quantum meruit. The Court finds that the tuition rate charged by Ivymount is reasonable. The reasonableness of the rate has not been challenged by the District; it is the same rate charged to every other student at Ivymount, including those placed by other school districts in Virginia and Maryland, and was approved by the Maryland Department of Education. The District will be ordered to pay the difference between what it has paid Ivymount for Bryan's tuition and related services and the amount Ivymount charges for the 1992–93 academic year.

An appropriate order accompanies this Opinion.

### ORDER

Plaintiffs seek relief against Defendants, who have filed a motion to dismiss. A hearing on the merits was held on May 24 and May 25, 1993 and this Order represents the final judgment of this Court in the above-captioned proceedings.

Upon consideration of the parties' motions and after conducting an evidentiary hearing, for the reasons stated in the foregoing Memorandum Opinion, it is hereby

---

**10.** James Marchbank, Ivymount's Director of Finance and Administration, testified that the difference between the tuition charged by Ivymount and the rate paid by the District is $1,488 per year. In addition to the tuition differential, the District has not been paying Ivymount the full amount charged for the "related services" Bryan receives. *See* 20 U.S.C. § 1401(a)(17) for a definition of "related services" for purposes of the IDEA. Mr. Marchbank testified that the difference between the amount charged by Ivymount for Bryan's related services and that paid by the District is approximately $500–600 per year. The District has been paying Chelsea the full amount Chelsea has charged for Elizabeth's related services.

**11.** As is the case with Chelsea, Ivymount bills the District at its regular rate, and each month the District crosses out the amount charged by Ivy-

mount and writes in and pays the rate the District has determined to pay. Officials from the DCPS Office of Special Education and officials from Ivymount have had a number of conversations over the course of the past year concerning the dispute between the tuition charged and the rate paid. Ivymount did execute contracts with the District of Columbia for the provision of special education services in prior years. However, it declined to do so for the 1992–93 school year because of the lower rate the District said it would pay. Thus, while, unlike Chelsea, Ivymount did not explicitly indicate that Ivymount did not accept the tendered payments as payments in full, it is clear to this Court that Ivymount did not accept the payments as full satisfaction of monies due and that the District never was under the impression that Ivymount was accepting its monthly remittance as payment in full.

ORDERED that the District of Columbia pay the Chelsea School the difference between what it has paid Chelsea and Chelsea's full tuition rate for the services provided by Chelsea to Elizabeth Fisher during the September 1992 through March 1993 months of the 1992–93 academic year within 10 days from the date of this Order. It is

FURTHER ORDERED that the District pay the full amount of the tuition billed by Chelsea for the remaining months of the 1992–93 academic year within 30 days after the District is billed for such sums; it is

FURTHER ORDERED that the District of Columbia pay the Ivymount School the difference between what it has paid Ivymount and the amounts charged by Ivymount for tuition and related services provided to Bryan Stamm during the 1992–93 academic year. For all such sums past due, the District shall make such payments within 10 days from the date of this Order. And it is

FURTHER ORDERED that, with regard to all sums not yet paid, the District pay the full amount of the amounts billed by Ivymount for tuition and related services provided to Bryan Stamm during the 1992–93 academic year within 30 days after the District is billed for such sums.