Nikita PETTIES, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

David SKERRITT, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

Civ. A. Nos. 95–0148(PLF) 94–2451(PLF).

United States District Court,
District of Columbia.

May 12, 1995.

Beth Goodman, Tanya A. Harvey, Washington, DC, for plaintiffs in No. 95–0148.

Karen Buck, Office of Corp. Counsel, Sp. Litigation Section, Washington, DC, for defendants.

Francisco Lopez, Bogin and Eig, P.C., Washington, DC, for plaintiffs.

Beatrice Hendricks, Office of Corp. Counsel, Washington, DC, for defendants.

*OPINION*

FRIEDMAN, District Judge.

These two cases are before the Court on plaintiffs' motions to show cause why the defendants should not be held in contempt of court for failing to comply with this Court's Orders of March 17, 1995. The plaintiffs in the *Petties* case are minor students and their parents who represent a class certified by the Court on March 17, 1995, and defined as follows:

all [District of Columbia Public Schools ("DCPS")] students currently placed in private special education schools or receiving special education and/or related services from a private third party provider, all [DCPS] students placed in public schools who currently are receiving related services from private providers, and all [DCPS] students who have been determined by an administrative decision or by agreement with the DCPS to be eligible to receive services from private providers (including private placements).

The plaintiffs in the *Skerritt* case are David Skerritt, an eleven-year-old child with emotional and learning disabilities, and his mother.

On March 17, 1995, the Court, after hearing argument, entered a Preliminary Injunction in the *Petties* case directing the defendants to comply with their statutory obligations under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and its implementing regulations, and made the following findings:

Defendants have placed numerous DCPS students in private special education facilities pursuant to their obligation to provide an appropriate placement for these students. Similarly, defendants have entered into contracts or other agreement[s] with private firms or other entities for the provision of special education related services to students attending public schools within the [DCPS] system. Defendants are required by law to maintain these students' placements and related services by paying the costs thereof.

Defendants have not paid the costs of private special education placements or related services either fully or on a current or timely basis for at least the 1994–1995 school year. Consequently, defendants have violated the IDEA and other laws and regulations intended to ensure that DCPS students with special education needs receive a free, appropriate education.

Unless defendants fully and immediately fund all DCPS students currently in private special education placements and/or

receiving related services from private providers and, in addition, give adequate written assurances that such payments will be made on a current basis in the future, many, if not all of those students will have those placements and/or services terminated, and there is no indication that appropriate alternative placements will be available to meet the students' individual needs. *Petties v. District of Columbia*, C.A. No. 95–0148, Preliminary Injunction at 1–2 (D.D.C. Mar. 17, 1995). The Court ordered the defendants to pay within 14 days all costs outstanding as of the date of the Court's Order, including costs of tuition for all private special education placements of DCPS students and all costs of all special education related services that private providers render to DCPS students pursuant to contracts or other agreements with the DCPS. The Court entered a similar Order on the same date in the *Skerritt* case.[1]

On April 25, 1995, upon motion of the plaintiffs in the *Petties* case, the Court directed the defendants to show cause why they should not be held in contempt of the Court's March 17 Order with respect to the following matters:

 1. Defendants' notification to private special education schools that, after June 9, 1995, defendants will not pay tuition or provide transportation for DCPS students placed in those schools;

 2. Defendants' failure to pay all outstanding costs of private special education placements and/or related services, including those for which DHS has been invoiced; and

 3. Defendants' failure to pay the outstanding costs of special education placements and/or related services as to which defendants claim there is a "dispute."

*Petties v. District of Columbia*, C.A. No. 95–0148, Order To Show Cause (D.D.C. Apr. 25, 1995).

In the *Skerritt* case, the Court granted plaintiffs' motion directing the defendants to show cause why they should not be held in contempt with respect to their notification to David Skerritt's school that they would not pay tuition or provide transportation for him after June 9, 1995. *Skerritt v. District of Columbia*, C.A. No. 94–2451, Order (D.D.C. Apr. 25, 1995). The defendants responded to the orders to show cause, and the Court heard argument from counsel in both cases on May 4, 1995.

### I. CIVIL CONTEMPT

█ The Court has both an inherent and a statutory power to enforce compliance with its orders and may exercise that authority through a civil contempt proceeding. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535–36, 16 L.Ed.2d 622 (1966); *United States v. United Mine Workers of America*, 330 U.S. 258, 330–32, 67 S.Ct. 677, 713–15, 91 L.Ed. 884 (1947); *SEC v. Parkersburg Wireless Ltd. Liab. Co.*, 156 F.R.D. 529, 534 (D.D.C.1994); *SEC v. Current Financial Services, Inc.*, 798 F.Supp. 802, 806 (D.D.C.1992). Congress codified the courts' contempt powers in 18 U.S.C. § 401, which provides:

 A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as— ...

 (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

A party is in contempt of court when it "violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir.1987) (*citing SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir.1981)), *cert. denied, Pennington v. McLaughlin*, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988).

█ In a civil contempt proceeding, the moving party has the burden of showing by

---

**1.** In the *Skerritt* case, the Court directed payment of all bills rendered by the School for Contemporary Education within 45 calendar days from receipt of the bill and ordered the defendants to "maintain David Skerritt's current educational placement at the School for Contemporary Education for the 1994–95 school year by paying the Maryland-approve tuition rate." *Skerritt v. District of Columbia*, C.A. No. 94–2451, Preliminary Injunction at 3 (D.D.C. Mar. 17, 1995).

clear and convincing evidence that (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order. *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir.1987); *see NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183–85 (D.C.Cir.1981); *SEC v. Current Financial Services, Inc.*, 798 F.Supp. at 806. The court need not find that the violations were willful or intentional. *SEC v. Current Financial Services, Inc.*, 798 F.Supp. at 806; *NOW v. Operation Rescue*, 747 F.Supp. 772, 774–75 (D.D.C.1990).

■ Civil contempt is a remedial device intended to achieve full compliance with a court's order. *Hicks v. Feiock*, 485 U.S. 624, 631–32, 108 S.Ct. 1423, 1429–30, 99 L.Ed.2d 721 (1988); *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d at 399–400. Its goal is not to punish but to exert only so much authority of the court as is required to assure compliance. *See Mercer v. Mitchell*, 908 F.2d 763, 768 n. 9 (11th Cir.1990); *Matter of Trinity Industries, Inc.*, 876 F.2d 1485, 1494 (11th Cir.1989); *NOW v. Operation Rescue*, 747 F.Supp. at 774. The sanctions imposed in civil contempt proceedings therefore ordinarily are conditional, and a person or entity held in civil contempt may avoid the sanctions by promptly complying with the court's order. *Hicks v. Feiock*, 485 U.S. at 632–35, 108 S.Ct. at 1429–31; *Penfield Co. v. SEC*, 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947).

The Court finds that when the defendants notified private special education schools that, after June 9, 1995, they will not pay tuition or provide transportation for DCPS students placed in those schools, they were in contempt of this Court's March 17, 1995, orders. The Court finds, however, that defendants are not in contempt of this Court's Order with respect to the other two matters raised by the plaintiffs in the *Petties* case.

## II. DISCUSSION

### A. Refusal To Pay For Class Members' Placements After June 9, 1995

By letter dated March 24, 1995, one week after the Court entered its Preliminary In-junction, defendant Dr. B. Garnett Pinkney, Director, Special Education Branch, the Logan School, sent notification to directors of all special education private schools in which DCPS students have been placed, advising them that the District of Columbia Public Schools will be closed early this year due to the current financial crisis faced by the District of Columbia government, that the last day of school for all DCPS students is June 9, 1995, and that all DCPS employees, including school bus drivers, would be furloughed from June 12 through June 23, 1995. Dr. Pinkney advised the directors of these schools that tuition for the private placements and bus transportation for DCPS students to private schools for special education therefore would be terminated as of June 9, 1995. Letter from Dr. B. Garnett Pinkney to All Special Education Private School Directors, Exhibit B to Memorandum in Support of Plaintiffs' Motion for Show Cause Order in Civil Action No. 95–0148, and Exhibit 2 to Memorandum in Support of Plaintiffs' Motion for Show Cause Order in Civil Action No. 94–2451; Affidavit of Dr. B. Garnett Pinkney, Exhibit 1 to Defendants' Memorandum in Opposition to Plaintiffs' Motion to Show Cause in Civil Action No. 95–0148, at ¶¶ 4, 7, and Exhibit 3 to Defendants' Memorandum in Opposition to Plaintiffs' Motion to Show Cause in Civil Action No. 94–2451, at ¶¶ 4, 7. The defendants did not advise either the plaintiffs or this Court before announcing this policy.

Plaintiffs in both the *Petties* and *Skerritt* cases maintain that the unilateral decision not to pay tuition and not to provide transportation services after June 9, 1995, are violations of both the IDEA and this Court's March 17 Orders. Defendants, on the other hand, maintain that it was permissible for them to decide that the school year will now end on June 9, 1995, instead of June 23, 1995, for all DCPS students, both regular students and special education students with special needs, and that all students must share equally in the consequences of the District's fiscal crisis that has required shortening the school year. Defendants argue that because they are treating all DCPS students equally—regular education students, special edu-

cation students in public schools and special education students in private schools—they are providing the equal treatment intended by the IDEA and recognized by this Court in *Mills v. Board of Education,* 348 F.Supp. 866, 876 (D.D.C.1972), and *Cox v. Brown,* 498 F.Supp. 823, 830 (D.D.C.1980).

■ As the Court noted in its Opinion of April 4, 1995, the purpose of the Individuals With Disabilities Education Act is to assure that children with disabilities have available to them a free and appropriate public education that addresses their unique needs. *Petties v. District of Columbia,* C.A. No. 95–0148, Opinion at 3–4 (D.D.C. Apr. 4, 1995); *see* 20 U.S.C. §§ 1400 *et seq.* To assure that this goal is met, the IDEA directs the child's parents, teachers and other professionals to develop an Individualized Education Program ("IEP") for each special education student that sets forth the required instructions and services designed to meet the particular child's unique needs. 20 U.S.C. § 1401(a)(20). Once the IEP is developed, the school system is required to provide an appropriate placement that meets those needs and, if an appropriate public placement is unavailable, the school system must provide an appropriate private placement or make available educational-related services provided by private organizations to supplement a public placement. 20 U.S.C. § 1401(a)(20); 34 C.F.R. §§ 300.340–300.350, 300.400–300.403.

■ The statute further provides that once a placement has been made, agreed to or determined to be appropriate after an administrative hearing, a school system proposing to change the placement must provide written notice to the student's parents and an explanation of why the school system proposes to take the action. It may not change a student's placement without the parents' agreement or a determination in an administrative due process hearing that the change in placement is appropriate and permissible under the IDEA. 20 U.S.C. § 1415; 34 C.F.R. §§ 300.504, 300.505, 104.36. As the Court previously held, maintenance of the placement includes full payment for the program in which the student is placed. *Petties v. District of Columbia,* C.A. No. 95–0148, Opinion at 7 (D.D.C. Apr. 4, 1995).

■ The defendants' arguments have a surface appeal because they suggest the equal treatment of all students, whether regular education students in public schools or special education students wherever placed. Upon closer examination, however, it is apparent that the decisions made by the defendants not only violate the statutory requirements of the IDEA and applicable regulations, but also in fact fail to provide equal treatment for all students. As the Court previously held, once a student is placed, the IDEA requires maintenance of the student's current placement and prohibits the DCPS from making unilateral changes in placements or the provision of related services without an administrative due process hearing. *Petties v. District of Columbia,* C.A. No. 95–0148, Opinion at 7 (D.D.C. Apr. 4, 1995); *see Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988) (*citing Burlington School Comm. v. Massachusetts Dept. of Education,* 471 U.S. 359, 373, 105 S.Ct. 1996, 2004, 85 L.Ed.2d 385 (1985)); *Zvi D. By Shirley D. v. Ambach,* 694 F.2d 904, 906 (2d Cir.1982); *Fisher v. District of Columbia,* 828 F.Supp. 87, 88–89 (D.D.C.1993). Stopping the payment of funds for students who are placed in another institution whose school year does not coincide with the shortened school year of the District of Columbia constitutes such a unilateral change in placement.

■ The decision of the DCPS to shorten the school year for students attending the DCPS schools has no bearing on what is appropriate, and therefore required, under the IDEA for students whose needs cannot be met within the DCPS schools. The decision to apply the shortened school year to such special education students violates the IDEA by unilaterally modifying the IEPs that have been designed, agreed upon or directed for each individual student based on his or her unique needs. Defendants' unilateral decision to cut off funding for private special education placements on June 9, 1995, is the same type of unilateral policy decision that undermines the individualized educational decision inherent in the IEP, and it vio-

lates the IDEA. *See Honig v. Doe,* 484 U.S. at 327, 108 S.Ct. at 606; *Zvi D. By Shirley D. v. Ambach,* 694 F.2d at 906; *Fisher v. District of Columbia,* 828 F.Supp. at 89.

The same is true with respect to the unilateral decision not to provide transportation to the private placement schools after June 9, 1995. The IDEA provides that transportation is a related service that a public school system is required to provide as part of its obligation to provide a free, appropriate public education for students with disabilities. 20 U.S.C. § 1401(a)(17); 34 C.F.R § 300.16. If the District of Columbia chooses to furlough school bus drivers as a part of its effort to ameliorate the fiscal crisis, it is free to do so. But in order to meet its statutory obligations under the IDEA, it must provide alternative transportation for special education students until the end of each student's school year. It may only be relieved of this obligation if it provides the requisite administrative hearing required before a placement can be changed or modified. 20 U.S.C. § 1415(b), (d); 34 C.F.R. §§ 300.504–300.505.

The defendants' equality of treatment argument does not withstand scrutiny. While it is true that all regular education students in public schools will have their school year shortened, they at least will be treated equally with their peers. In contrast, if special education students who attend private schools are not funded after June 9, 1995, they will be removed from ongoing programs and will not be permitted to complete the full curriculum for the year that their peers in their respective schools will complete. In addition, those students who are in diploma programs or IEP certificate programs will be deprived of the opportunity to take final exams for the year and thus likely will not be promoted to the next grade in school. Thus, the very harms that were of concern to the Court in deciding to grant the Preliminary Injunction will be exacerbated for these students, children of tender ages who are already physically or emotionally disabled and are less able than most to cope with physical or emotional stress. *See Petties v. District of Columbia,* C.A. No.

95–0148, Opinion at 7–11, 14–15 (D.D.C. Apr. 4, 1995).

Finally, the defendants, by their unilateral actions, taken only one week after the Court entered its Preliminary Injunction and without notice to the Court or to the plaintiffs, clearly violated the decision of this Court that required the defendants, *inter alia,* to "give written assurances, in a form satisfactory to the Court, that future payments for the costs of any and all private special education placements of DCPS students and for the provision of related services by private providers will be made on a current basis...." *Petties v. District of Columbia,* C.A. No. 95–0148, Preliminary Injunction at 3 (D.D.C. Mar. 17, 1995). The Court intervened in the first place because the defendants' unilateral and *ad hoc* decisions had led numerous private providers to threaten to displace DCPS students, to deny re-enrollment of the current students for the next school year, and to reject any further placements from the DCPS because of underpayment and late payment of bills. The Court's Order was intended, in part, to give these private providers confidence that they would be paid on a timely basis and that they no longer needed to fear disruptive payment practices on the part of the defendants with respect to the DCPS students who had been placed with them.

The letter sent by Dr. Pinkney so soon after the Court entered its Order has undermined the purpose and intent of the Court's Order and has only served to perpetuate "the consequences suffered by the plaintiffs from the uncertainties associated with the DCPS' payment practices." *Petties v. District of Columbia,* C.A. No. 95–0148, Opinion at 13 (D.D.C. April 4, 1995). Defendants' actions constitute a contempt of this Court's clear and unambiguous orders. The Court concludes, however, that the only sanction that is required at this time is to direct the defendants promptly to meet their statutory obligations to continue to fund placements and related services until the conclusion of the school year in each school in which DCPS students have been placed.

### B. Failure To Pay The Cost Of Placements For Students Placed Through The Department of Human Services

The plaintiffs in the *Petties* case argue that the defendants are also in contempt of the Court's March 17 Order because they have failed and continue to fail to pay promptly or fully the cost of placements for students in the plaintiff class whose tuition, related services or both are to be funded by the District of Columbia Department of Human Services ("DHS"), rather than by the District of Columbia Public School System. The defendants contend that DHS invoices are not covered by the Court's Order because none of the representative plaintiffs are funded by DHS, because the representative plaintiffs cannot adequately represent the interests of the students funded by DHS, and because it has always been defendants' understanding that the students covered by the Court's Order were only those funded by DCPS.

The Court's Order on this issue is at best unclear, and the defendants therefore are not in contempt of the Order for not making full or timely payments for DHS-placed or DHS-invoiced students. *See Armstrong v. Executive Office of the President, Office of Admin.,* 1 F.3d 1274, 1289 (D.C.Cir.1993); *D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 460–62 (7th Cir.1993). Furthermore, the Court never intended by its March 17 Order to cover such students. With the exception of one declaration not cited or relied upon by the Court in its April 4, 1995, Opinion explicating its reasons for granting the Preliminary Injunction, all the evidence presented to the Court as the basis for the Preliminary Injunction related to students placed and funded by the DCPS, not by DHS.

During the course of the argument on the motion to show cause, counsel for the parties in the *Petties* case made a number of representations that only underscore the fact that there was insufficient evidence before the Court on which it could have reached the DHS issue when it issued its Preliminary Injunction. For example, counsel for the District of Columbia represented that many of the students funded by DHS have been placed not as the result of an administrative hearing under the IDEA, but rather by judges of the Superior Court of the District of Columbia in the context of neglect, child abuse or delinquency cases. Other students have been referred to DHS by the DCPS because the DCPS has concluded that such students may require residential placements. Counsel for plaintiffs acknowledged that these references may occur either before or after an administrative determination has been made under the procedures set forth in the IDEA and that there may or may not be an IEP in place for these students.

The Court's Opinion and Order were premised on the fact that all students in the class covered by the Preliminary Injunction were students who had been placed or entitled to be placed under the IDEA after an administrative decision. The injunction did not cover DHS-funded students, and defendants therefore are not in contempt of the Court's Order. For these reasons and those stated at oral argument, the Court denies the motion to hold the defendants in contempt with respect to this issue.[2]

### C. Additional Outstanding Costs And Disputes

Plaintiffs in the *Petties* case maintain that defendants have failed to make certain payments required by the Court's Order. The defendants have agreed to pay some of these amounts but are disputing or require additional information about others. Some invoices from private providers, they maintain, go back to 1991 and they need more documentation from the affected schools before authorizing payments. Plaintiffs argue that defendants' failure to pay these disputed amounts violates the Court's Order that defendants must pay all outstanding amounts in full. Because insufficient evidence has been presented to establish whether defendants have legitimate disputes re-

---

**2.** As discussed at oral argument, plaintiffs in the *Petties* case are free to file a motion to amend their complaint or to modify the injunction to include DHS-funded students. Any such motion must be supported by evidence that the IDEA applies to the DHS students and that the defendants (and/or other District of Columbia officials) are violating the statute.

garding amounts allegedly owing, however, the Court will not hold defendants in contempt with respect to this issue. In any event, procedures that the parties will either consent to or that will be implemented by Court order will ensure that legitimately disputed invoices will be addressed in a timely manner.

In addition to its other requirements, the Court's Order of March 17, 1995, in the *Petties* case contemplated that mechanisms would be put in place for the monitoring of defendants' compliance with the Order. It required defendants to provide "written assurances, in a form satisfactory to the Court," that future payments will be made on a current basis and to provide reports on a regular basis regarding defendants' compliance with the Court's Order. *Petties v. District of Columbia,* C.A. No. 95–0148, Preliminary Injunction at 3 (D.D.C. Mar. 17, 1995). The defendants have presented certain information to the plaintiffs and made a proposal regarding procedures by which defendants would provide such monitoring and regularly file reports in order to comply with the Court's Preliminary Injunction. The plaintiffs have made a submission to the Court regarding defendants' proposal.

As plaintiffs have correctly stated, the defendants' conduct to date and their proposal for monitoring and reporting do not satisfy the intent of the Court's Order to provide certainty to the special education providers and to eliminate the defendants' practice of responding in a piecemeal fashion to their statutory obligations. At the show cause hearing, the Court asked the parties to attempt to agree on a proposed order to put adequate procedures in place for monitoring and reporting that satisfy the intent of the Court's order and to provide adequate guarantees to providers. If they cannot do so, plaintiffs are to submit a proposed order to the Court. The Court suggested that the procedures to be proposed also should suggest a process or mechanism to resolve the outstanding costs and disputed claims.

## V.  CONCLUSION

For the reasons stated in this Opinion, the Court finds the defendants in contempt of the Court's Orders of March 17, 1995, with respect to the unilateral announcement to private providers that they will not pay tuition or provide transportation after June 9, 1995, for DCPS students placed in those schools. The Court will enter orders in the *Petties* and *Skerritt* cases this same day directing that payments for such placements and services be made in a timely fashion as required by the IDEA.

The Court denies the request of plaintiffs in the *Petties* case to hold defendants in contempt for their failure to pay all outstanding costs for special education placements, related services or both for which DHS has been invoiced. The Court's Order of March 17 did not cover such placements and services. The Court also denies the request of plaintiffs in the *Petties* case to hold defendants in contempt for failure to pay all outstanding costs for private special education services, related services or both as to which defendants claim there is a dispute. This issue will be dealt with in a separate procedural order that the Court will issue to implement paragraphs 3 and 4 of its March 17 Preliminary Injunction after receiving a submission from the parties.

SO ORDERED.

## *ORDER*

This case came before the Court on May 4, 1995, for a hearing in which defendants were directed to show cause why they should not be held in civil contempt for their violations of the Court's Preliminary Injunction arising from the following matters:

1. Defendants' notification to private special education schools that, after June 9, 1995, defendants will not pay tuition or provide transportation for DCPS students placed in those schools;

2. Defendants' failure to pay all outstanding costs of private special education placements and/or related services, including those for which DHS has been invoiced; and

3. Defendants' failure to pay the outstanding costs of special education placements and/or related services as to which defendants claim there is a "dispute."

174

Upon consideration of the memoranda and exhibits filed by the parties in support of and in opposition to Plaintiffs' Motion For Show Cause Order, the record in this case, and the arguments of counsel in open court, and for the reasons stated in the Court's accompanying Opinion, the Court finds that the defendants are in contempt of the Court's Order of March 17, 1995, for their unilateral announcement to private providers that they will not pay tuition or provide transportation for DCPS students placed in those schools after June 9, 1995; that the defendants are not in contempt for their failure to pay all outstanding costs to special education placements, related services or both for which DHS has been invoiced; and that defendants are not in contempt for failure to pay all outstanding costs and services for private special education costs, related services or both as to which defendants claim there is a dispute. Accordingly, it is hereby

ORDERED that defendants notify all private providers within five calendar days from the date of this Order that the letter of March 24, 1995, from Dr. B. Garnett Pinkney to the directors of all special education private schools in which DCPS students have been placed has no applicability to these schools and that all such providers will be paid through the end of each provider's school year; it is

FURTHER ORDERED that defendants shall pay fully within 14 calendar days all costs now outstanding and shall pay any bill covering the costs of placements and related services that shall be provided for the remainder of the 1994–95 school year, as previously determined by the class members' respective private schools, within 30 calendar days after receipt of any such bill; it is

FURTHER ORDERED that defendants provide related transportation services after June 9, 1995, until the end of the school year to DCPS students placed in private special education schools; and it is

FURTHER ORDERED that the parties shall submit by May 19, 1995, a proposed order that implements paragraphs 3 and 4 of the Court's March 17, 1995, Preliminary Injunction and outlines a process or procedure

to dispose of outstanding costs and disputed claims.

SO ORDERED.