**Opinion issued November 20, 2018**



In The

# Court of Appeals

### For The

# First District of Texas

_____

**NO. 01-18-00688-CV**
**NO. 01-18-00847-CV**

_____

**IN RE EUNICE KELM, Relator**

---

**Original Proceedings on Petition for Writ of Mandamus**

---

# O P I N I O N

In two separate original proceedings, Eunice Kelm seeks to compel the trial

court to vacate orders in a guardianship proceeding.[1] The first order compelled her

to submit to an involuntary medical examination without allowing her to present

---

1    The underlying case is *In the Guardianship of Eunice Kelm*, cause number 2018-008, pending in the County Court at Law of Washington County, Texas, the Honorable Eric Thomas Berg presiding.

evidence or argument at the hearing mandated by Estates Code section 1101.101(c). The second order was entered without notice or a hearing, striking the pleadings filed by Kelm's retained counsel and ordering him to disgorge within 24 hours all attorney's fees paid to him and to produce an accounting within 72 hours. The purported justification for the second order was counsel's lack of a certification required under Estates Code chapter 1054, although the plain text of the statute imposes no certification requirement on counsel retained by a proposed ward unless the attorney ad litem is being replaced.

We conditionally grant the petitions.

## I

Relator and proposed ward Eunice Kelm is 74 years old. She lives on a cattle ranch in Washington County. Since her husband's recent death in June 2017 after a long illness, Kelm has operated the ranch herself. She has completed various projects on the property, as she contends she promised her late husband she would do.

Cynthia Buck is Kelm's only daughter. Buck filed an application to be appointed her mother's temporary guardian.[2] She alleged that immediate action was necessary due to the danger to her mother's person and estate presented by her "uncontrollable spending" of an "inappropriate amount of money on cattle and

---

[2]    *See* TEX. ESTATES CODE § 1251.003.

miscellaneous personal items." She alleged her mother's "inability to manage her personal finances" as shown by her "incorrectly balanced bank accounts." Buck also stated that her signature was forged by her mother on "three different loan applications," and that Kelm "purchased at least two firearms after never having owned one."

Buck filed a motion suggesting that Kevin Mutscher, an attorney who represented Kelm on other legal matters, be appointed as attorney ad litem to represent her interests.[3] The trial court granted the application and motion, appointing Buck as Kelm's temporary guardian and Mutscher as her attorney ad litem. The order appointing temporary guardian expressly stated that notwithstanding the powers granted to the temporary guardian, Kelm retained "the right to retain independent legal counsel, obtain independent psychological and psychiatric tests and evaluations from the providers of her choosing or with the guidance of her independent counsel."

Kelm retained her own counsel, Scott J. Scherr, who filed a contest to the application for appointment of a temporary guardian. She obtained referrals from her primary care physician for additional testing, including an MRI and a PET scan,

---

[3] *See id*. § 1251.004 ("On the filing of an application for temporary guardianship, the court shall appoint an attorney to represent the proposed ward in all guardianship proceedings in which independent counsel has not been retained by or on behalf of the proposed ward.").

an examination by psychiatrist Dr. Boris Rubashkin, and an examination by neurologist Dr. Todd A. Maraist. Dr. Rubashkin, who specializes in geriatric psychiatry, signed a letter stating his finding that Kelm had "no psychopathology" and "she has the capacity to make reasonable and responsible decisions."

In response, Buck filed an application for permanent guardianship and for a temporary restraining order, temporary injunction, and permanent injunction.[4] She also filed a motion for an independent medical examination,[5] relying upon a neuropsychological evaluation report from a clinical psychologist, Nancy A. Leslie, Ph.D.

Acting through her retained counsel, Kelm opposed the motion for the medical exam, asserting that she had already been evaluated by a psychiatrist, and she provided the trial court a copy of Dr. Rubashkin's report. Kelm's appointed attorney ad litem also independently objected to Buck's motion for an independent medical exam.

---

[4]    *See id.* § 1101.001.

[5]    *See id.* § 1101.103(c) ("If the court determines it is necessary, the court may appoint the necessary physicians to examine the proposed ward. The court must make its determination with respect to the necessity for a physician's examination of the proposed ward at a hearing held for that purpose. Not later than the fourth day before the date of the hearing, the applicant shall give to the proposed ward and the proposed ward's attorney ad litem written notice specifying the purpose and the date and time of the hearing.").

4

On Monday, July 9, 2018, the trial court commenced a hearing on Buck's motion for an independent medical examination. Kelm was subpoenaed as a witness and attended the hearing in person. Dr. Rubashkin also attended the hearing pursuant to a subpoena. Neither was called to testify. Rather, Buck's counsel called Dr. Leslie as the first witness. Next, Buck herself was called to the stand. During the cross-examination of Buck, the trial judge called the attorneys to the bench for a discussion off the record. The trial judge then stated for the record: "It's after 5:00. Our air conditioner is off. So, we will be back to complete this hearing on Monday the 16th at 1:30."

But the hearing did not resume the next Monday. Instead, the trial court canceled the remainder of the hearing, and it apparently orally asked counsel for Kelm and Buck to submit lists of medical doctors specializing in geriatric psychiatry so that it could select one to perform the medical examination.

Kelm's retained counsel responded to the trial court by letter, providing the names of four medical doctors specializing in geriatric psychiatry. Counsel observed that Kelm "was not afforded the opportunity to present her case" and objected to "the denial of the opportunity to present evidence at the hearing."

The trial court signed an order granting Buck's motion. The order stated that "after hearing the evidence and having considered such motion and the applicable law," the court found that "good cause has been shown for the granting of such

motion." The trial court ordered Kelm to undergo a "mental examination" for the purposes of assessing her present mental state, whether she is an incapacitated person for purposes of the guardianship proceeding, her care needs, her susceptibility to manipulation and exploitation, her judgment, and the need for a guardianship of her person and estate.

In response to the order, Kelm's retained counsel filed a written objection to the order for independent medical examination. Despite the order's recitation that it was entered after the court heard the evidence, the objection noted that Kelm was not permitted to complete the cross-examination of Buck, nor was she given any opportunity at the hearing to present any witnesses or offer any evidence. In particular, the objection noted that Dr. Rubaskin was the only geriatric psychiatrist who had examined Kelm, he would have been called to testify, and he was prepared to testify why he believed Kelm did not need a guardian or an additional examination. The written objection also stated that Kelm herself would have testified that she had been examined by three physicians, had received an MRI and a PET scan, had been examined by a neurologist, and none of the physicians had recommended a guardian. The record does not reflect any action taken on the written objections.

Kelm filed a petition for a writ of mandamus, asking that we direct the trial court to withdraw its order requiring the medical examination. We granted temporary relief staying the order to consider that petition.

To be entitled to mandamus relief, a petitioner must show both that the trial court abused its discretion and that there is no adequate remedy by appeal.[6] Generally, appellate courts will hold that a trial court has abused its discretion if its actions were made "without reference to any guiding rules and principles" or were otherwise "arbitrary or unreasonable."[7] A trial court has no discretion in determining what the law is or applying the law to the facts.[8]

The Estates Code generally requires a physician examination as a predicate to determining that a person is incapacitated for purposes of appointing a guardian.[9] The Code also authorizes a court to "appoint the necessary physicians to examine the proposed ward" in terms that suggest that the trial court has discretion to decide whether to order such an examination.[10] However, due process requires that a person

---

[6]     *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2004).

[7]     *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

[8]     *Prudential*, 148 S.W.3d at 135.

[9]     *See* TEX. ESTATES CODE §§ 1101.101(a)(1)(A), 1101.103(a).

[10]    *Id*. § 1101.103(c).

7

in jeopardy of suffering a significant infringement on her personal liberty receive notice and a meaningful opportunity to be heard.[11] The Estates Code thus establishes a procedural framework for a court to appoint physicians to examine a proposed ward. The proposed ward and her attorney ad litem are entitled to notice at least four days before the hearing, and then the court's "determination with respect to the necessity for a physician's examination" is to be made "at a hearing held for that purpose."[12]

Kelm contends that the trial court clearly abused its discretion by failing to comply with the statute and violating her right to due process. In response, Buck contends that she, not Kelm, bore the legal burden of showing that the physical examination was "necessary." She therefore argues that "due process does not

---

[11] *See Mathews v. Eldridge*, 424 U.S. 319, 349, 96 S. Ct. 893, 909 (1976); *Univ. of Texas Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995); *see also Cruzan v. Dir., Missouri Dept. of Health*, 497 U.S. 261, 278, 110 S. Ct. 2841, 2851 (1990) (recognizing a competent person's constitutionally protected liberty interest in refusing unwanted medical treatment); *In re Guardianship of K-M*, 866 A.2d 106, 113 (Me. 2005) (in guardianship proceeding, recognizing a respondent's liberty interest in refusing to undergo a psychological examination).

[12] TEX. ESTATES CODE § 1101.103(c); *see also Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 984 (1990) (observing that the U.S. Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property"); *Parham v. J.R.*, 442 U.S. 584, 607, 99 S. Ct. 2493, 2507 (1979) (noting that even when a formal hearing is not necessary to satisfy due process, a state remains free to require one).

require Relator—the party without the burden of proof—to prove or disprove the 'necessity' of an independent medical examination."[13] Buck has made no other legal argument to suggest that Kelm was not entitled to complete the cross-examination that was in progress when the hearing was adjourned or to present her own evidence and arguments at the hearing in opposition to the motion.

In the specific context of Estates Code section 1101.103(c) and its provision that the necessity of the appointment of a physician to examine a proposed ward is to be determined "at a hearing held for that purpose" after notice to the ward and her attorney ad litem, we conclude that it was a clear abuse of discretion for the trial judge to receive testimony only from two witnesses for the applicant, then to cancel the remainder of the hearing and appoint a physician to examine the proposed ward without giving her a similar opportunity to be heard.

---

[13] In this regard, Buck relies upon *Ex parte Roosth*, 881 S.W.2d 300 (Tex. 1994) (per curiam). That opinion addressed the circumstance of a person found in contempt for failure to pay child support without proof beyond a reasonable doubt of his ability to make the payments. The Supreme Court noted that while due process "requires that an alleged criminal contemnor not shoulder the burden of persuasion to disprove an element of the offense of contempt," due process did not require that ability to pay court-ordered child support be proved as an element of the offense of contempt, rather than as an affirmative defense by a preponderance of the evidence. *Id.* at 300-01 (citing *Hicks v. Feiock*, 485 U.S. 624, 632–33, 108 S. Ct. 1423, 1429–30 (1988)). This principle does not inform our consideration of whether Kelm was deprived of a procedural right to be heard at a contested hearing on the subject of whether a physician should be appointed to examine her against her will.

Buck also argues that mandamus relief is inappropriate because Kelm has an adequate appellate remedy. The argument does not address Kelm's liberty interest in not being involuntarily compelled to submit to a physical examination—in a legal proceeding she did not initiate[14]—without the benefit of a hearing where her evidence and arguments in opposition to the necessity of such an examination are heard. Kelm contends that the trial court's order requires her to submit to an examination and divulge personal information that should have been determined to be unnecessary after consideration of the examinations that already have been performed by her doctors, including a geriatric psychiatrist who would have been called to testify on her behalf if she had been given the opportunity at the hearing.

"Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings."[15] Just as forcing parties to trial in a case they

---

[14]   As Kelm notes, the fact that she did not place her mental or physical condition in controversy by initiating this proceeding distinguishes this case from other circumstances in which trial courts have ordered physical and mental examinations for "good cause shown" pursuant to Rule 204 of the Rules of Civil Procedure.

[15]   *Prudential*, 148 S.W.3d at 136.

10

agreed to arbitrate defeats a substantive right,[16] forcing a proposed ward to submit to a medical examination without holding a hearing and giving her a fair opportunity to be equally heard defeats important individual rights safeguarded by the Estates Code.[17] It imposes an unjustifiable burden on the proposed ward's liberty interest in being free from a compelled physical exam far out of proportion to any benefit that may obtain to the applicant in proceeding without appropriate due regard for the ward's interest in advocating on an equal footing in opposition to the request.

We conclude that no appellate remedy would be adequate to redress the ward's lost procedural opportunity to present evidence and argument that there is no necessity for this guardianship proceeding to continue by compelling her to involuntarily submit to an independent medical examination.[18] Accordingly, mandamus relief is warranted in No. 01-18-00688-CV.

---

[16] *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (appeal held to be inadequate remedy); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272–73 (Tex. 1992) (same).

[17] TEX. ESTATES CODE § 1101.103(c).

[18] *Cf. Than*, 901 S.W.2d at 933 (remedy for denial of due process is due process); *County of Dallas v. Wiland*, 216 S.W.3d 344, 354 (Tex. 2007).

11

## II

While the first mandamus petition was pending in this court, another dispute

arose. On September 14, 2018, without any motion or prior notice to the parties,[19]

the trial judge sent the parties the following letter:

> A thorough review of the State Bar list of approved Guardianship Attorney's indicates that as of September 14, 2018, attorney Scott Scherr does not hold a certificate required to represent a person's interests in a guardianship proceeding, and that he did not hold such a certificate upon undertaking representation of the proposed ward in this matter. Therefore, in accordance with the Texas Estates Code, the Court informs all of you of the following orders, effective immediately:
>
> Strike all pleading filed by Mr. Scherr in this proceeding.
>
> Mr. Scherr is ordered to disgorge any and all fees or monies collected from the proposed ward.
>
> The Court reserves any other actions or remedies that may be appropriate. Ms. Pacheco to draft written order for the Court, and submit for immediate signature. The Court so orders, as noted on the docket sheet.

In response, Kelm's appointed attorney ad litem formally adopted the

pleadings previously filed by her retained counsel, and he filed a written objection

to the trial court's September 14 letter rulings. The attorney ad litem specifically

noted that the Estates Code does not require retained counsel in a guardianship

---

[19]     The trial court's challenged actions in this second mandamus proceeding may not have been undertaken entirely on its own initiative, considering that Buck claims in filings with this court that her counsel suggested at an August 28, 2018 oral hearing "that Mr. Scherr does not possess the requisite certificate in guardianship law and procedure as mandated by the Texas Estates Code."

proceeding to be certified. The attorney ad litem further challenged the striking of Kelm's pleadings without notice and a hearing and the order to disgorge fees. The trial court overruled this objection by order signed September 20, 2018.

On September 21, the trial court signed an order, finding that Scherr "is not certified by the State Bar of Texas, or a person or other entity designated by the State Bar of Texas, as having successfully completed a course of study in guardianship law and procedure sponsored by the State Bar of Texas or the State Bar of Texas' designee." The court also found that Scherr "has failed to provide the Court a copy of the required certification or any other proof that he was certified at the time he undertook representation of Ms. Kelm in the above-entitled and numbered cause and/or at any time subsequent thereto." The order stated that Scherr "lacked authority to represent Ms. Kelm in the above-entitled and numbered proceeding and any related appeals," noting that "[t]o date, the Court has not determined that Ms. Kelm has the capacity to contract." The court included a finding that Scherr "is not qualified to represent Ms. Kelm due to the lack of certification required by the Texas Estates Code and therefore does not and cannot represent her in this proceeding or in related appeals," further observing that Kelm "is currently adequately represented by Attorney Ad Litem, Kevin W. Mutscher, and he has and continues to perform his duties as required by the Texas Estates Code." The order concluded by restating the court's prior rulings that "pleadings filed by Mr. Scherr

13

are stricken," that "Mr. Scherr and his Firm are hereby required to disgorge any and all fees, monies, assets, or other security interests collected and/or obtained from Ms. Kelm's person and/or estate within 24-hours from the entry of this Order," and "Mr. Scherr and his Firm shall file an accounting with the Court within 72-hours from the entry of this Order identifying all fees, monies, assets, or other security interests collected and/or obtained from Ms. Kelm's person and/or estate."

Acting through both her retained counsel and her appointed attorney ad litem, Kelm objected in writing to the September 21 order. Then they challenged it by a mandamus petition.

Kelm contends that the trial court clearly abused its discretion by ruling that she could not retain Scherr to represent her because he lacked a certification purportedly required by the Estates Code. Kelm was subject to a temporary guardianship at the time she claims to have retained Scherr, and there is no presumption that she was incapacitated at that time.[20] Indeed, the trial court's temporary guardianship order expressly confirmed Kelm's "right to retain independent legal counsel." In response, Buck contends that the trial court correctly determined that Scherr was required to have a statutory certification in "guardianship

---

[20]   TEX. ESTATES CODE § 1251.002 ("A person for whom a temporary guardian is appointed under this chapter may not be presumed to be incapacitated.").

law and procedure," and she relies upon two statutes, Estates Code sections 1054.006 and 1054.201.

Estates Code section 1054.006, relating to "Representation of Ward or Proposed Ward by Attorney," provides:

> (a)  The following persons may at any time retain an attorney who holds a certificate required by Subchapter E to represent the person's interests in a guardianship proceeding instead of having those interests represented by an attorney ad litem appointed under Section 1054.001 or another provision of this title:
>
>> (1)  a ward who retains the power to enter into a contract under the terms of the guardianship, subject to Section 1202.103; and
>>
>> (2)  a proposed ward for purposes of a proceeding for the appointment of a guardian as long as the proposed ward has capacity to contract.
>
> (b)  If the court finds that the ward or the proposed ward has capacity to contract, the court may remove an attorney ad litem appointed under Section 1054.001 or any other provision of this title that requires the court to appoint an attorney ad litem to represent the interests of a ward or proposed ward and appoint a ward or a proposed ward's retained counsel.

Assuming a proposed ward's continuing capacity to contract, which is not presumed to be lacking and which has not been affirmatively disproved in this case, by its plain and express terms this statute does not purport to limit the proposed ward's ordinary freedom to retain and be represented in civil proceedings by the counsel of her choice. Instead the Code clarifies that certain subjects of guardianship proceedings

15

have an affirmative statutory right to retain a certified attorney[21] "instead of" being represented by a guardian ad litem appointed by the court.[22] Particularly in a circumstance in which an appropriately certified attorney has been appointed and is actively serving as the proposed ward's attorney ad litem, as is the case here, nothing in section 1054.006 purports to limit a proposed ward from retaining additional counsel to represent her interests. To the extent a proposed ward might seek entirely to replace an appropriately appointed attorney ad litem with a non-certified retained counsel, the certification requirement would apply.[23]

---

[21] *See id.* §§ 1054.201-.203 (Subchapter E qualifications to serve as court-appointed attorney).

[22] *See id.* § 1054.001 ("In a proceeding under this title for the appointment of a guardian, the court shall appoint an attorney ad litem to represent the proposed ward's interests.").

[23] *See id.* § 1054.006(a)(2). In her brief, Buck references an alleged judicial admission by the attorney ad litem that a proposed ward's retained attorney must have the Subchapter E certification. But even to the extent that the mandamus record does reflect that the attorney ad litem filed a motion "to be removed in favor of Scott J. Scherr, or another attorney at his firm, who possesses the requisite guardianship certification," all that established was that the ad litem took the position that he could be relieved from his appointment to the extent Scherr or one of his associated counsel had the certification, as contemplated by the statute. The attorney ad litem did not take the position that Scherr was required to have a certification in order to be retained by Kelm. To the contrary, the attorney ad litem opposed Scherr's disqualification.

The other statute relied upon by Buck, Estates Code section 1054.201(a), describes the Subchapter E certification requirement. It provides:

> An attorney for an applicant for guardianship and a court-appointed attorney in a guardianship proceeding, including an attorney ad litem, must be certified by the State Bar of Texas, or a person or other entity designated by the state bar, as having successfully completed a course of study in guardianship law and procedure sponsored by the state bar or the state bar's designee.

Scherr is not an attorney for an applicant for guardianship in this proceeding. He is not a court-appointed attorney in this guardianship proceeding. Thus, by its express terms, section 1054.201(a)'s certification requirement does not apply to Scherr. Buck has provided no other authority to suggest that it does.

We hold that the trial court clearly abused its discretion by ruling that Kelm's retained counsel "lacked authority" to represent her for want of a certification that was not required under the Estates Code.[24] Because that mistaken understanding was the only stated reason for striking retained counsel's pleadings, ordering him to disgorge fees, and ordering him to file an accounting with the court, we likewise hold that these orders were an abuse of the trial court's discretion.

---

[24] Kelm also argued that the trial court abused its discretion by failing to follow the procedure under Rule 12 for challenging an attorney's authority to represent a party, including its provisions for notice and a hearing. Our holding on the merits of the disqualification order makes it unnecessary for us to address this separate and distinct challenge to the process leading to the trial court's order.

Buck contends that Kelm would have an adequate remedy on appeal because she is being adequately represented by the attorney ad litem. We disagree. As in other attorney-disqualification cases in which a party was erroneously denied the right to be represented by counsel of choice, we hold that Kelm would have no adequate remedy from the trial court's order by an appeal from a final order.[25] Even to the extent the attorney ad litem is performing "adequately," which we have no reason to question, that does not mean that Kelm must be satisfied to be represented by a single court-appointed and court-selected lawyer to defend her personal liberty against the permanent guardianship petition being prosecuted by the team of lawyers engaged by Buck.[26]

\* \* \*

We direct the respondent to vacate the order for independent medical examination pending the completion of the hearing described in Estates Code section 1101.103(c). In so doing, we express no opinion about how the trial court

---

[25] *See, e.g.*, *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004); *In re Texas Windstorm Ins. Ass'n*, 417 S.W.3d 119, 129 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding).

[26] *See, e.g.*, *Oldham v. Calderon*, No. 14-95-01426-CV, 1998 WL 104819, at \*3 (Tex. App.—Houston [14th Dist.] Mar. 12, 1998, pet. denied) (op. on reh'g) (not designated for publication) ("A guardianship proceeding threatens the personal and financial freedoms of a proposed ward, and those freedoms must be ably defended.").

should exercise its discretion in determining whether an examination is necessary to aid in the determination of whether the proposed ward is an incapacitated person. We further direct the respondent to vacate the entirety of the order finding that Kelm's retained counsel lacks authority to represent her. We are confident the respondent will promptly comply, and our writs will issue only if he does not. All other motions pending in these original proceedings are struck as moot.[27]

Michael Massengale
Justice

Panel consists of Justices Jennings, Higley, and Massengale.

---

[27] Kelm filed motions to strike supplemental records filed by Buck based on her failure to comply with the rules of appellate procedure. *See* TEX. R. APP. P. 52.7. Because the information Buck attempted to supply through her supplementation of the record with information outside the trial court record would not have changed our resolution of any dispositive issue, we need not resolve all the particulars of the parties' record disputes.